Good morning, Your Honors. Gary Burcham on behalf of Appellant Servando Ortuno-Garcia. I'll stick with the Ferretta issues to start off this morning. Unlike the previous case, when Mr. Ortuno made the request to represent himself, the district court did hold the Ferretta colloquy and gave Mr. Ortuno the advisals at that time. It told Mr. Ortuno what the charge was, it told him what the penalties were, and it also, Judge Battaglia, at some length, told him it was a bad idea to represent himself and he should not. The point where it went wrong in this case is that Mr. Ortuno never made a knowing and intelligent waiver of his right to counsel. And I think the best evidence in support of that is the statement from Judge Battaglia himself when he appointed a standby counsel where he said that you're basically not going to know anything that's going to happen in your case. And that's Judge Battaglia's take because that's essentially what the Ferretta colloquy showed. Mr. Ortuno answered questions with responses like more or less. He said he didn't understand numerous concepts. It was a situation where the judge did what he was supposed to do, but the responses from Mr. Ortuno indicated that this was a gentleman who simply did not understand what the charge was. He did not understand what or did he not understand how, and isn't there a difference? I mean, I don't think that there's a requirement that somebody be effective as an advocate or counsel to be able to knowingly and intelligently waive the right to counsel. No question about it, he was not competent counsel. I think both, Your Honor. I think it was the what and the how. I think the how was evident from the trial and the pretrial proceedings where he did really not a single thing favorable in support of his own defense. But in terms of the what, I think when you look, and this kind of goes back to whether we can look at post-waiver conduct or not, when you look at his approach and his thoughts as to what the appropriate defenses were to this 1326 charge, he had absolutely no idea what the 1326 charge really consisted of. Judge Battaglia told him you're charged with being a deported alien found in the United States, but he never went through the elements with Mr. Ortuno. subsequent attempts to defend his case really showed he didn't understand what this charge was about. Mr. Ortuno was making, trying to make arguments that, well, I was only deported by, I wasn't deported by a judge, or the deportation wasn't lawful, or I've been here in this country for this many years and I have these contacts with U.S. citizens. If Mr. Ortuno. We hear those arguments all the time. I know you. But what it shows is that Mr. Ortuno did not understand really what the elements of the case were. In a 1326 trial, obviously the legality of a deportation is not an issue. And, you know, the very complicated legal concepts that go into a 1326 prosecution, both pretrial motions under 1326d or trial defenses based upon alienage, but the legality of a deportation is not an issue for trial, and it's clear from the record that Mr. Ortuno simply did not understand what the charge really consisted of. He knew he was in trial in a criminal court for something to do with being here illegally, but in terms of really getting down to the elements and what the charge really consisted of, he just, he didn't have a clue. Perhaps, but, I mean, it's not the most complicated charge. And when you have somebody who doesn't have a defense, an effective defense against an element, you often hear something that's really more an appeal to nullification or extenuating circumstances or cut me some slack or something. I take his arguments to perhaps be the best that he could offer because he didn't have a real defense. I'm not trying to say I'm going to decide he's guilty, but in terms of whether his ineffectiveness as an advocate sheds light on whether he understood the charge, I go back to my first observation. It's not the most complicated charge in the world. What is it he didn't understand about it? Well, I've tried these cases myself in San Diego, and you're right. A lot of times you're arguing these cases before a jury and there's nothing to argue. And you feel silly up there because the elements have been established and there's nothing left. And in this case, Ms. Stingley tried the case well and I think went a long way towards meeting her burden. I think that the real – We're not asking you to concede that your client is guilty. I think the real damage in this case deals with the pretrial proceedings. The way you win these cases and the way you get better offers from prosecutors like Ms. Stingley is you raise 1326D challenges to the legality and the validity of the prior deport. That's what these cases are about. These cases are – We've had a busy week with those cases. Yeah. I had so many cases dealing with collateral attacks, the 1326, I mean, the stack would go to the ceiling here. So that's what this case was about. That's where the challenge needed to be raised. And that's where the problem occurred in terms of Mr. Ortuna representing himself. He couldn't do anything in court or anywhere else, but he wasn't even in the ballpark of being able to recognize and then raise a 1326D challenge. And, again, that goes back, I think, to his just complete failure to understand what this case really was about and what needed to be done to defend it. Yeah. And I agree with Mr. Hermanson that FREDA gets courts in difficult situations and the government's not part of the – FREDA is bad news to everybody in the courtroom, including the government in most cases. It is, and I agree with that. But I think in this case there was enough evidence in the record from the initial waiver and then later on when his performance really started to come out to show that this was a guy who just really couldn't represent himself under the Edwards standard. Let me give you this hypothetical. Let's assume that a proper colloquy is given to a defendant and the defendant says, Judge, I really don't understand what you're telling me, but I am steadfast in my desire to talk to this jury myself and tell them my side. I'm not a lawyer. You've told me all these downsides. I don't really get what you're saying about elements or any of that, but I really want to represent myself. Isn't it the professing of the desire to represent himself that must be unequivocal, whether or not he understands everything? I agree that when you talk about unequivocal, it is the statement, do you want to represent yourself, and someone saying, well, I don't know, maybe, versus saying, in this case, yes, I do. That is where the centerpiece of the unequivocal analysis is. But when we talk about the knowing and intelligent waiver, that's where we get to the question of how to do that. Was there standby counsel? There was standby counsel. How can you knowingly leave them? I guess I just don't. Explain to me that the trial or into the trial there has been an original inquiry and things are not going well for the defendant. Because he's not doing a very good job. What should the district court do at that point? I think the district court at that point should explain to Mr. Ortuno that the trial is not fair, that the trial does not appear to be fair, the weak case I cited in sort of the third prong of this argument, and that standby counsel needs to take over to try the case. I think it should happen. In this kind of case, I mean, the horse is gone out of the barn, because as you've already observed, if you're going to assuming that there's not the unusual case where there's actually a defense, your leverage is all pretrial. You get into the middle of the trial, I mean, the Ferretta waiver is bad news for the district judge, because I don't know what the district judge is supposed to do. This guy is busy hanging himself. He probably would have been hung anyway, but he's hanging himself. Is there really an alternative? Well, I think the horse should have still been in the barn. I think this was something that should have been done. That was weeks ago. It had been brought up pretrial. I mean, he asked, after your point, let Mr. Ortuno represent himself. They started talking about the A file, which, of course, as the Court knows, is where all the immigration documents are and which is always the basis for the 13206d challenge. And Mr. Ortuno basically said, oh, I don't know what's in there. I don't need to see it. And right there, I mean, the judge had to know that this guy isn't going to be able to get to square one in either pretrial or ---- People are allowed to plead guilty. We take guilty pleas all the time and take them frequently outside the context of a plea agreement, where it's clear the defendant is getting something for the guilty plea. Sure. We don't say a guilty plea is inherently not knowing and not willing. Rule 11, you know, sets forth a whole bunch of stuff that district judges need to ---- You need to advise him. Right. It's less clear. You know, a defendant can know what he doesn't know, to paraphrase Socrates. You know, he can say, I don't understand all this stuff, but the judge has done his duty and told him, and if the defendant is making a voluntary decision on that basis, then I think it is knowing and voluntary because he knows there's things out there that might hurt him. He doesn't necessarily understand them all, but he's been advised to the best of the English language what they might be. Correct. But I think if we just got to the basics of the Rule 11 colloquy, if the judge said, you're pleading guilty to X crime and elements are A, B, and C, do you understand those? And the defendant said, I have no idea what you're talking about. I think the court would have to stop at that point and could not take the plea because, again, just like in this situation, it has to be knowing and voluntary and intelligent. And if a person doesn't understand the concepts underlying what they're waiving, I think it's impossible to get there. I wonder if you're right about that, and you may well be, but it seems to me that if the judge said, okay, you say you don't understand. Let me explain it again and put it in very plain language. And then the defendant said, well, I don't know about that, but let me tell you what I did. And he then admits to every element of the crime. I think that's a plea that could be made. That would possibly be closer if the defendant sort of gave his own factual basis which were the elements. But in this context, isn't that the substitution of the unequivocal desire to perceive himself even without perfect knowledge of the pitfalls he's going to run into? But in that case, in Your Honor's hypothetical, the person wants to plead guilty in this hypothetical. Or in this case, Mr. Ortuno wants to defend his case and try to beat the case. I think those are sort of distinct concepts. Again, it's a difficult situation. Even though as a practical matter, they amount to the same thing. Judge Battaglia is a great judge. I think he missed this one, and we ask the Court to remand the case. Thank you. Thank you. Thank you. Good morning, Your Honors. Laura Stingley on behalf of the plaintiff, the United States. Your Honors, I would first like to just to respond to Mr. Burcham in terms of the Ferretta colloquy. The – I believe the record shows that the district court took painstaking efforts to explain to the appellant the nature of the charges. And first, I want to just respond to Mr. Burcham. He indicated that the district court did not go through the elements. When, in fact, Judge Battaglia repeated it a couple of times when – to let the defendant know the elements. You're an alien. You were previously deported. You did not have permission from the federal government to reenter. And on the day in question, you were, in fact, found in the United States. And the reason that Judge Battaglia needed to repeat the charges, the penalties, and the dangers that the defendant was facing was there were a couple of times when the defendant indicated more or less. However, ultimately, the defendant said, I will. I will represent myself. That is an unequivocal representation to the court that he is invoking his right to represent himself. And so the fact that during the initial colloquy and the questioning that the defendant indicated more or less, that was trumped by the fact that he ultimately responded that he would represent himself. And then also, this defendant, he was very aware of what was going on. As case in point in the trial transcript, there were several occasions during the plea colloquy when the defendant actually started making substantive arguments to the court saying, well, I was never deported. And then the court would advise him, well, sir, there are documents that indicate that you were removed from the United States. So this is not a situation where the appellant had no clue as to what the nature of the charges were. And although it is not clear from the transcripts, throughout the pretrial hearings as well as the trial, the appellant presented himself as being somewhat defiant in terms of the at one point when the judge was advising him, he said, well, it doesn't matter. I'm beat anyway. So the that's something to take into account, which obviously you don't see from the text of the transcript. But if there was a reporting, you would see it in the intonation of his voice. And do Your Honors have any, would you like me to proceed with? I would like to ask you about the sidebar. I can understand how it happens, but it seems peculiar to me that, in effect, there's a conference, a private conference between the prosecutor and the judge with the defendant at that moment entitled to have a standby counsel go up. He says no. And the judge makes a point of saying the defendant himself is not going to go up. He's just going to have a private conference with you. Is that right? Well, Your Honors, I have, in fact, been going back and forth struggling with this. And the one thing I do want to say is that I think it is arguable, although I don't know that it would necessarily prevail, but I think it is arguable that in this narrow circumstance where the defendant was actually a witness on the stand, he had elected the assistance of his standby counsel who was questioning during his direct examination, was making objections during the cross-examination. The standby counsel who, in fact, participated in a sidebar where it was discussed that some of the sidebar counsel's questions regarding the appellant's immigration history was going to actually confuse the jury in terms of whether or not his prior removal was valid. And so at the time that the United States requested a sidebar, there is an argument that the defendant for this limited period of time was represented by counsel. And so when the Judge Battaglia indicated to the sidebar, I mean, to the standby counsel, you know, please come up and to the appellant, can he come up, and he says no, that that, in fact, was a waiver of his presence at sidebar. He wasn't asked if he wanted to come up. He wasn't asked if he wanted to waive the opportunity to have somebody there. He said he didn't want the standby counsel there. And in this unusual situation, he is the principal representative of himself. The end effect, I mean, I think there's a separate issue with regard to whether it had any impact. But I have to say, as I read the transcript of it, and you didn't have control over it, I'm not trying to fault you, and I understand how the judge gets there. But in the end, you look at it, and it's okay, the judge and the prosecutor are trying to figure out how to establish this prior felony. It looked really strange as I read it. I understand that, and that's why I did struggle with it. I mean, the United States, because we believe that there is that narrow argument under these circumstances that it was a waiver, although I do concede that the defendant himself or, pardon me, the appellant himself did not waive. I would like to go on. I'm just, this scenario puzzles me a little. Could the district court have brought the defendant himself down to participate in this conference? In the circumstances? That would have been even odder, I suppose. It would be odd. And then also looking at it, yes, the appellant was representing himself, but at the same time, he was the witness. And so you look at, during a trial, would you have a witness participate, step down off the witness stand, and participate in the sidebar? So looking at it as he was a witness, I do not believe that that would be appropriate. What would happen if you had a represented defendant who was on the witness stand testifying, the judge calls for a sidebar, and the lawyer says to the judge, my client would like to be present for the sidebar? Well, yes. Then under those circumstances, then outside the presence of the jury. And the jury would have the defendant over. Correct. And I understand that was one of the arguments Mr. Burcham was making in terms of the options available to the court. So why wasn't it harmful? Your argument is that it didn't make any difference. Is that the case? Yes, that is the case. Because of the fact that what was actually discussed during the brief sidebar is very important. And before I get to the sidebar, prior to the sidebar, the appellant was advised that the United States would be able to ask him about two prior felony convictions. We would not be able to go into the nature of the convictions. And then, again, the night before he testified, Judge Battaglia took the care to again advise him, look, you make the decision, sir, whether or not you're going to testify. However, if you do, please be mindful that the United States is going to question you about your prior convictions. And so you need to be mindful of that when you're testifying. So the appellant already knew and the court had already made the ruling that these convictions were coming in. So in terms of what was discussed during the sidebar, the United States believes that that was really harmless in terms of it was not a discussion as to whether or not these convictions could come in. It was a question as to could the United States introduce certified conviction documents, or was it best to have the court take judicial notice. And so let's look at it. If the appellant was allowed to participate in that sidebar, the courts are looking at would that affect the outcome of the case. So if he were allowed to participate in that sidebar, he could argue, no, I don't want the certified conviction documents to come in. And he would have a good argument under 403, which is why it was appropriate for Judge Battaglia to take judicial notice. So therefore, the jury would not actually see the underlying convictions. Or the judge was looking out for defendant's interest by avoiding the more prejudicial impact. Whether that's true or not, there was no other result from the sidebar that would have been more beneficial to defendant. That's correct. Because the only two options were for the appellant to challenge the conviction documents coming in or to challenge the court taking judicial notice, which would really not be a prevailing argument because the court had before it certified conviction documents. So that's why the United States believes that, and then also looking at the conviction documents, or pardon me, the United States actually being able to ask the defendant or have the court take judicial notice of the documents, that did not affect the outcome of the case. Because the United States had already proven beyond a reasonable doubt the elements of the 1326 charge. So it's not a situation where you have a defendant who's arguing, hey, if I have been able to participate in that, there would be a drastic difference in the outcome. The jury would have changed their mind. And so that was really not the case here. Anything else you need to tell us? No. Unless Your Honors have any additional questions, I will submit on the briefing. Thank you. Thank you. Rebuttal. Just a couple of quick points. Ms. Deanley said that Mr. Ortuno made numerous arguments at trial. All the arguments were rational. The one she gave was about the deportation. The deportation was not at issue at trial. And everything he argued was irrelevant, it was immaterial, and showed, again, that he did not understand the charges against him. Regarding the sidebar, you know, it was error. You can't have a sidebar with no one from the defendant's present. I argued it's structural. I've been arguing structural error to this Court for 17 years. I've never had the Court agree with me. But I think it's true. I've never had a situation where you had something like this with no one from the defendant's present. It's extremely odd. And Ms. Deanley talks about, well, you know, what would have been different. I don't think we get there. I think this is something that affected the framework of the trial. We have an adversarial system where both sides participate, and we can't have a situation at a sidebar regarding an important concept. Rule 609 evidence is huge in criminal cases. We can't have a sidebar regarding that and just simply have an ex parte discussion between a prosecutor. Now, if he had come down and participated and said, I want those documents to be in there and shown to the jury, I don't want you to take judicial notice of that, because I think the jury ought to see that and understand. So what would your argument be on appeal? Well, I'm not sure it would have made that much of a difference. It might have strengthened your Fred argument that he's really a ---- True. The government conceded in its brief that the evidence should have never come in in the first place. The government said his testimony was completely irrelevant, and she's right. It was. And so the 609 evidence never should have come in in the first place. That's a harmless error issue, and I concede. I'm not going to win that with this panel. But I think it was a structural error in terms of him not being able to participate, not taking a waiver from him, not asking him if he wanted to be there. We just can't have something like this with no one from the defense present and no valid knowing waiver. One of the biggest problems with it is, and I don't know if you've made this argument, the idea of the jury sitting there while the judge and the prosecutor are having a private conversation. Sure. That's of some concern. It looks unfair. And, again, we have this system where both sides are represented and the jury knows that and they take turns. And then we have this special conference right before the jury is told he's a felon, and there's no one from the defense there. It's very odd. And I think this is a structural error, and I'd ask the Court to find that. We thank you. Thank you very much. Thank you, counsel, for your helpful arguments. The case to start is submitted.
judges: Cogan, Schroeder, Clifton